UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS E. HEFFRON, ) | |
| ) | |
| *Plaintiff*, ) | Case No. 1:15-cv-00996 |
| ) | |
| v. ) | Judge Hon. Sharon Johnson Coleman |
| ) | |
| GREEN TREE SERVICING, LLC, ) | Mag. Judge Hon. Jeffrey Cole |
| a Delaware Limited Liability Company, ) | |
| ) | Jury Trial Demanded |
| *Defendant*. ) | |

**RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT**

NOW COMES the Plaintiff, THOMAS E. HEFFRON ("Mr. Heffron"), by and through his attorneys, Zamparo Law Group, P.C., and in opposition to Defendant GREEN TREE SERVICING, LLC's ("Green Tree") Motion to Dismiss Plaintiff's First Amended Complaint, responds as follows:

**I.     Introduction**

Far from a formalistic dispute over whether Mr. Heffron's mortgage called for escrow amounts to be paid to Green Tree, this case involves Green Tree's repeated and continuous daily telephone calls to Mr. Heffron. Calls—up to ten per day, every day of the week, including weekends and even on holidays—to demand payment from Mr. Heffron, despite his having told Green Tree that the amounts demanded were already paid, not owed, and that he refused to pay them. Green Tree also made false, deceptive, and misleading statements about the amount, nature and character of the payments it demanded from Mr. Heffron. As for the dispute over escrow amounts, Defendant conveniently glosses over multiple contradictory communications from Green Tree to Mr. Heffron about his escrow obligations (*e.g.*, Am. Compl. Ex. D, "…we are not collecting any funds to pay your taxes and insurance.") and the ambiguous and confusing language in the GMAC

Loan Modification (Am. Compl. Ex. A, "…*if* such escrow amounts are required…") and subsequent Green Tree Modification (Am. Compl. Ex. E, "…does not include any amounts owed for escrow."). These inconsistencies, especially in light of Green Tree's telephone harassment campaign, confused and frustrated Mr. Heffron. Green Tree's harassment drove Mr. Heffron to such depths of despair that he attempted to take his own life. Mr. Heffron suffered severe emotional and physical injury including anxiety, depression, fear, lack of concentration, chest pains, headaches, acute kidney failure, and swollen hands and feet, which injury required acute hospitalization and continues to require ongoing medical treatment.

Mr. Heffron's experience with Green Tree's collection harassment and telephone abuse is not unique. *See, e.g., Banks v. Green Tree Servicing, LLC, et al.*, 14-cv-2825 (N.D. Ill. 2014); *Messina v. Green Tree Servicing, LLC*, 14-cv-07099 (N.D. Ill. 2014); *Modica v. Green Tree Servicing, LLC*, 14-cv-03308 (N.D. Ill. 2014*), Green Tree Servicing, LLC v. Respert*, 14-CV-193 (M.D. GA 2014), *Castro v. Green Tree Servicing, LLC*, 10-GV-7211 (S.D.N.Y. 2010), *Massey v. Green Tree Servicing, LLC*, 09-cv-01117 (W.D.W.V. 2009), *Obarr v. Green Tree Servicing, LLC*, 09-cv-09496 (C.D. CA 2009).

**II.** <u>**Standard of Law**</u>

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556. Federal Rule of Civil Procedure 8(a)(2) sets forth the basic pleading requirement of a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although Rule 8 does not require a plaintiff to plead particularized facts, the factual allegations in the complaint must sufficiently raise a plausible right to relief above a speculative level.

2

*Arnett v. Webster*, 658 F.3d 742, 751-52 (7th Cir. 2011). When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *Iqbal*, 556 U.S. at 668.

### III. <u>Argument</u>

#### A. **Plaintiff States a Viable Claim for Relief Under the Fair Debt Collection Practices Act ("FDCPA").**

i. *Mr. Heffron's FDCPA Claims Are Not Time-Barred*

Mr. Heffron's FDCPA claims are not barred by FDCPA's one-year statute of limitations. This suit was filed on January 30, 2015, meaning any discrete FDCPA violations that took place between that time and January 30, 2014 are clearly within the statute of limitations. As will be demonstrated, this Court may properly consider conduct outside that time frame, particularly the pattern of harassing phone calls Mr. Heffron alleges.

Green Tree began servicing Mr. Heffron's mortgage in February of 2013. Am. Compl. at ¶ 30. Mr. Heffron was unaware of this change and did not have any contact with Green Tree until approximately late April of 2013 when he called Green Tree on the telephone. Am. Compl. at ¶¶ 33-4. Green Tree representatives began to call Mr. Heffron daily on the telephone at that time. Am. Compl. at ¶ 37. These telephone calls did not diminish until approximately August of 2014. Am. Compl. at ¶ 61. This suit was filed on January 30, 2015.

a) <u>Mr. Heffron Timely Alleges Discrete Violations of the FDCPA</u>

As Defendant rightly observes, discrete violations of the FDCPA must be brought within one year of their discovery by a plaintiff. 15 U.S.C. § 1692k(d). Mr. Heffron alleged numerous discrete violations of the FDPCA within the statutory period. For example, Green Tree's March 26, 2014 letter made false and misleading statements about the portion of Mr. Heffron's monthly payment set aside for escrows. Am. Compl. at ¶¶ 76-7. Additionally, Green Tree's April 24, 2014

3

letter falsely stated that Mr. Heffron's mortgage had been modified pursuant to HAMP, a statement that was factually impossible because Mr. Heffron had never participated in a trial period plan. Am. Compl. at ¶¶ 78-9. Both of these events are discrete misrepresentations about Mr. Heffron's alleged liabilities in light of the mortgage modification he had with Green Tree, not the original obligations stemming from the GMAC modification. As such, they are not simply new communications concerning an "old" debt. The cases cited by Defendant to the contrary are distinguishable from Mr. Heffron's clams herein because they only involve written communications, not telephone harassment, that took place both within and outside of the statute of limitations period.[1] In light of all of the above, Mr. Heffron has alleged sufficient facts to indicate that his FDCPA claims are timely.

      b)      <u>Mr. Heffron Timely Alleges a Cumulative Violation of the FDCPA Stemming from Defendant's Telephone Harassment</u>

Certain ongoing violations of the FDCPA, especially violations arises out of a pattern of telephone harassment like Mr. Heffron's claims, are subject to the "continuing violation doctrine" that requires that a plaintiff bring suit within one year of when a defendant's conduct culminates in an actionable injury. *See*, *e.g.*, *Limestone Development Corp., v. Village of Lemont, Illinois, et al.*, 520 F.3d 797 (7th Cir. 2008). The Seventh Circuit has explained that:

> The office of the [continuing violation] doctrine is to allow suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought. It is thus a doctrine not about a continuing, but about a cumulative, violation. A typical case is workplace harassment on grounds of sex. The first instance of a coworker's offensive words or actions may be too trivial to count as actionable harassment, but if they continue they may eventually reach that level and then the entire series is actionable.

---

[1] A thorough review of *Arvie v. Dodeka, LLC, et al.* (which also treats all of the other cases cited by Defendant) indicates that the court did *not* hold that plaintiff's FDCPA claims were entirely barred by the statute of limitations, but simply noted that some of the collection activity was not actionable because it fell outside of the statute of limitations. The court supported its decision by appealing to the *Sierra* decision that explicitly distinguished its facts from a hypothetical case involving a series of threatening letters, only some of which are time-barred.

4

*Id.* at 801 (citing *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)). The workplace sexual harassment scenario discussed by the Seventh Circuit has been extended by analogy to collection harassment. One court puts it this way:

> Certain kinds of acts prohibited by the FDCPA . . . , e.g., a phone call at midnight, or a threatening call to a consumer's employer, are discrete acts. Here, however, Plaintiff alleges that Defendant persisted in a pattern of repeated calls including automated phone calls. As stated above, the Supreme Court recognized in *Morgan* that, in contrast to discrete acts of discrimination, such as a retaliatory adverse employment action, claims alleging a hostile work environment are not discrete acts because, "Their very nature involves repeated conduct." *A key commonality shared by the FDCPA . . . and Title VII's prohibition of a hostile work environment is the focus on a pattern of conduct.* As in the case of employment, claims of a pattern of debtor harassment consisting of a series of calls "cannot be said to occur on any particular day." *Under the appropriate circumstances therefore, the continuing violation doctrine may apply to debt collection claims.* The key is whether the conduct complained of constitutes a continuing pattern and course of conduct as opposed to unrelated discrete acts. If there is a pattern, then the suit is timely if "the action is filed within one year of the most recent date on which the defendant is alleged to have violated the FDCPA," and the entire course of conduct is at issue.

*Joseph v. J.J. Mac Intyre Companies, L.L.C.*, 281 F.Supp.2d 1156, 1161 (N.D. Cal. 2003) (citations omitted and emphasis added). Additionally, courts have held that evidence of wrongful acts occurring outside the statute of limitations may be used to support claims based on acts occurring within one year before suit was filed. *See Padilla v. Payco Gen. Am. Credits, Inc.*, 161 F. Supp. 2d 264, 273 (S.D.N.Y. 2001) ("[T]he statute of limitations is not intended to deprive plaintiffs of the use of evidence of violations that took place more than a year before filing.").

Like the plaintiff in *Joseph*, Mr. Heffron alleged that Green Tree subjected him to a pattern of harassing telephone calls that began in April of 2013 and did not diminish until August of 2014, a date that falls within the statute of limitations period. Am. Compl. at ¶¶ 33-4, 37, 61. Under the analysis proposed by Defendant, calls placed before January 30, 2014—one year before this suit was filed—are not properly considered in light of the FDCPA's one-year statute of limitations. However, Defendant's analysis in incapable of making sense of the *pattern* of the telephone calls, the most salient part of Mr. Heffron's injury. Just like a victim of workplace harassment, Mr. Heffron

5

was not driven to take his own life by Green Tree's initial phone calls in April of 2013. However the cumulative effect on Mr. Heffron of enduring a year-long telephone harassment campaign was profoundly injurious to Mr. Heffron. Am. Compl. at ¶¶ 1-2. In light of this cumulative effect and its relationship to Green Tree's attempt to collect a debt from Mr. Heffron, Defendant's arguments that Mr. Heffron's claim is time-barred must be rejected and this Court should consider the entire body of collection calls placed to Mr. Heffron by Green Tree.

        ii.        *Mr. Heffron has adequately alleged that Green Tree is a "Debt Collector"*

The FDCPA "treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee and as creditors if it was not." *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003). Creditors are not covered by the act. *Id.* To be a debt collector under the FDCPA, Green Tree would have to have acquired the debt already in default or it would have to believe the debt was in default at the time Green Tree acquired it. *See* 15 U.S.C. § 1692a(6)(F)(iii); *Schlosser*, 323 F.3d at 539.

Mr. Heffron alleged that Green Tree is a "debt collector" subject to the FDCPA. Am. Compl. at ¶¶ 88-9. On the whole, the allegations of the Amended Complaint unequivocally describe Green Tree's pursuit of a past-due, defaulted mortgage *from the very first.* From the beginning of his interaction with Green Tree, Green Tree representatives called Mr. Heffron repeatedly to demand sums that Green Tree declared past due. Am. Compl. at ¶¶ 37-8. Moreover, for additional clarity in his Amended Complaint, Mr. Heffron alleged that his previous servicer, GMAC, wrote him letters indicating that his mortgage was in default in the months leading up to GMAC's transfer of servicing rights to Green Tree. Am. Compl. at ¶¶ 28, 89. Those letters were attached to the Amended Complaint as Exhibit C. Mr. Heffron did not pay any additional sums in the months GMAC's letters reference. Am. Compl. at ¶ 29. Green Tree itself had already indicated that Mr. Heffron's mortgage was in default when they acquired it from GMAC in the very first statement it

provided to Mr. Heffron, albeit through the law firm in Florida and not to him directly. February 16, 2013 Statement, attached hereto and made a part hereof as Exhibit A.[2] The Statement prominently indicates that "You have an unapplied funds balance due to a partial payment." Since getting the GMAC Modification in September of 2012, Mr. Heffron had been paying $484.47 each month. Am. Compl. at ¶¶ 26, 29, 37. If those payments led to a partial payment as reported in Exhibit A, they must not have been full payments. Mr. Heffron's mortgage must have been in default. This means that the § 1692a(6)(F)(iii) exception cannot apply to Green Tree.

Defendant's demands that Mr. Heffron himself make the determination of whether his mortgage was in default at the time Green Tree acquired servicing rights to it is simply an attempt to sidestep Congress' intent in drafting the FDCPA's exclusion for mortgage servicers in 1692a(6)(F)(iii). As this Court has recognized, even loans that are in good standing can be treated as though they are in default by mortgage servicers, subjecting the servicer to liability under the FDCPA. *Banks v. Green Tree Servicing, LLC, et al.*, 14-cv-2825, Doc. 34 at 6-7 (N.D. Ill. Order of March 5, 2015) (finding that Green Tree was a "debt collector" subject to the FDCPA when it treated a customer's loan as if it were in default when the loan was actually in good standing, the principal balance having been erroneously reported to Green Tree by the customer's prior servicer) (Opinion attached hereto and made a part hereof as Exhibit B). The Sixth Circuit's opinion in *Bridge v. Ocwen Federal Bank, FSB*, a case involving the 1692a(6)(F)(iii) exception to the definition of "debt collector," offers additional insight into why this must be so:

> As we have previously noted, "[t]he Fair Debt Collection Practices Act is an extraordinarily broad statute. Congress addressed itself to what it considered to be a widespread problem, and to remedy that problem it crafted a broad statute." Our

---

[2] Although not attached to Mr. Heffron's Complaint or Amended Complaint, Exhibit A herein is evidence that rebuts Defendant's statements that it is not a "debt collector" and demonstrates why additional discovery in this case will clarify this issue such that dismissal is not appropriate. *See Twombly*, 550 U.S. at 556 (plaintiff must allege "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim].")

> actions are guided by the hand of Congress, and thus we apply the Act broadly according to its terms. Our sister circuits have done the same. Therefore, we hold that the definition of debt collector pursuant to § 1692a(6)(F)(iii) includes any non-originating debt holder that either acquired a debt in default or has treated the debt as if it were in default at the time of acquisition. It matters not whether such treatment was due to a clerical mistake, other error, or intention.

*Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355, 362 (6th Cir. 2012) (citations omitted). It makes perfect sense to defer to the alleged debt collector itself for purposes of determining whether an entity is acting as a debt collector or a creditor under the FDCPA. The *Bridge* court continued:

> Thus, a FDCPA defendant cannot escape coverage under the Act by asserting to the court that the debt was not actually in default, despite having dunned plaintiffs for months or years in the face of plaintiffs' pleas or proof that the collector has made some error. A defendant may not retroactively change the status of the plaintiff it has pursued as an alleged debtor. To hold otherwise would defy the clear congressional mandate we are charged with upholding.

*Id.* at 362-3 (citations omitted). This is precisely what happened in Mr. Heffron's case. As soon as Green Tree knew how to get a hold of him on the telephone, its representatives began to call him requesting additional amounts past due. Am. Compl. at ¶ 37.

In light of all of the above, Green Tree is a "debt collector" subject to the FDCPA. Defendant's arguments to the contrary must be rejected.

    iii.  *Plaintiff adequately pled a violation of Section 1692e of the FDCPA*

The allegations supporting Mr. Heffron's claims that Green Tree violated § 1692e and its subsections are entirely distinct from Mr. Heffron's subjective beliefs on the subject of his escrow liabilities. Mr. Heffron alleges that Green Tree made myriad false, deceptive, or misleading representations in connection with its attempts to collect a debt from him including, without limitation, that Mr. Heffron had been late in paying his homeowners' insurance premiums; that Mr. Heffron had missed monthly payments; that Mr. Heffron was participating in a Trial Period Plan pursuant to HAMP; and that Mr. Heffron's mortgage had been modified pursuant to HAMP. Am. Comply. at ¶ 74-80. Contrary to its representations in the instant motion, Green Tree explicitly told

Mr. Heffron that it was not collecting funds to pay his taxes and insurance. Am. Comp. at ¶ 51, Exhibit D. Mr. Heffron has adequately pled a violation of Section 1692e of the FDCPA and Defendant's arguments to the contrary must fail.

    iv.  *Plaintiff adequately pled a violation of Section 1692f of the FDCPA*

Section 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Mr. Heffron's claims do not arise from a simply rehashing of the misrepresentations that comprise the basis of his § 1692e claims, above. Rather, he alleges that Green Tree sought escrow amounts that were already paid, and not due from him. Am. Compl. at ¶¶ 42, 49, 50, 54-61. If Mr. Heffron is indeed correct that he was not required to pay escrow items, Green Tree's conduct would certainly violate § 1692f(1) (prohibiting "the collection of any amount [including any interest, fee, charge, or expense incidental to the principal obligation] unless such amount is expressly authorized by the agreement creating the debt or permitted by law.) If, however, as Defendant argues, the situation is more complex, Mr. Heffron was still subjected to unfair collection efforts because he received conflicting information from Green Tree on whether he owed these items and that he never received any escrow statements from Green Tree. Am. Compl. at ¶¶ 46, 48. In the instant motion to dismiss, Green Tree did not dispute these allegations. Failure to send escrow statements violates the Real Estate Settlement Procedures Act ("RESPA"). 12 U.S.C. § 2609(c)(1)(A), 12 U.S.C. § 2609(c)(2)(A) (requiring mortgage servicers to send customers initial escrow account statements and annual escrow account statements, respectively). Although § 2609 does not provide for a private cause of action, this Court should find that Green Tree's failure to comply with its requirements amounts to a violation of § 1692f of the FDCPA because it is unfair to demand sums from him without provided statutorily mandated

9

statements explaining why and how much.³ This should be true irrespective of whether, as Defendant's argue, Mr. Heffron was actually liable for escrow amounts according to the various mortgage-related documents. Mr. Heffron states a claim under § 1692f of the FDCPA.

      v.      *Plaintiff adequately pled a violation of Section 1692d of the FDCPA*

Section 1692d of the FDCPA prohibits a debt collector from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt" and specifically "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. 1692d, d(5). Mr. Heffron alleges that Green Tree called him up to ten times each day and that Green Tree representatives would hang up after causing Mr. Heffron's phone to ring with the intent to vex and harass him. Am. Compl. at ¶¶ 1, 37, 39, 40, 41, 43, 61. Similar conduct has been held to violate the FDCPA. *See, e.g., Swearingen v. Portfolio Recovery Assoc., LLC*, 892 F.Supp.2d 987, 989-90 (N.D. Ill. 2012) (defendant's motion for summary judgment denied when at least 22 calls made in a ten-week period); *Hendricks v. CBE Group, Inc.*, 891 F. Supp. 2d 892, 897 (N.D. Ill. 2012) (defendant's motion for summary judgment denied when approximately 159 calls made to plaintiff over a two-month period). Defendant's pending motion appears to completely ignore Mr. Heffron's telephone harassment allegations. *Lane v. Fein Such and Crane*, 767 F. Supp. 2d 382, 390 (E.D.N.Y. 2011), cited by Defendant in its brief, rejected a 1692d claim premised upon an allegedly false affidavit filed in conjunction with a state court foreclosure action. Mr. Heffron's allegations cited above stand in stark contrast to such conduct. Thus, Mr. Heffron states a claim under § 1692d of the FDCPA.

---

³ The only other case Mr. Heffron's counsel was able to find on this point is *Kevelighan v. Trott & Trott, PC*, 771 F. Supp. 2d 763, 774 (E.D. Mich. 2010) (rejecting an FDCPA claim premised upon a RESPA claim without further elaboration). However, given how central the escrow conflict is to Mr. Heffron's case is, he begs the Court's thoughtful analysis of how Green Tree's failure to provide statements contributed to the unfairness of its attempts to collect escrow amounts from him.

### B. Plaintiff States a Claim for Relief Under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA")

Mr. Heffron states a claim for relief under ICFA because Green Tree deceived him as to why escrow payments were due and unfairly applied monies he paid toward principle and interest against escrow items notwithstanding his objections. Mr. Heffron's ICFA claim grows not simply from the fact that Green Tree, his mortgage servicer, held all the cards, but because it continuously misled and deceived him.

#### i. *Plaintiff adequately pled a violation of ICFA for deceptive practices*

Mr. Heffron was repeatedly deceived by Defendant's numerous false and misleading statements. Am. Compl. at ¶ 99. Chief among these deceptions was the unsolicited and deceptive HAMP modification. Am. Compl. at ¶¶ 62-70, Exhibit F. Mr. Heffron was not eligible for such a modification at that time because he did not participate in the required Trial Period Plan and offering him such a modification violated HAMP eligibility rules. Additionally, despite Green Tree's deceptive representation that "we are not we are not collecting any funds to pay your taxes and insurance," (Am. Compl. Ex. D), Green Tree routinely applied money it received from Mr. Heffron to allegedly past due escrow amounts.[4] As a matter of practical fact, very little, if any, of the money that Mr. Heffron paid was actually applied to principal and interest. Mr. Heffron has pled a violation of ICFA for deception.

#### ii. *Plaintiff adequately pled a violation of ICFA for unfair practices*

Unfairness under the ICFA "depends on a case-by-case analysis." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010). A plaintiff may prove an ICFA unfairness claim by showing that the challenged practice "offends public policy." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951,

---

[4] Payment histories obtained by Mr. Heffron's counsel from Green Tree pursuant to Qualified Written Requests establish unequivocally that Green Tree applied money paid by Mr. Heffron first to outstanding escrow advances that Green Tree itself, and then to principal and interest on Mr. Heffron's mortgage. *See Twombly*, 550 U.S. at 556 (Fed. R. Civ. P. 12(b)(6) standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim].")

11

961 (Ill. 2002). "And a practice can offend public policy 'if it violates a standard of conduct contained in an existing statute or common law doctrine that typically applies to such a situation.'" *Boyd v. U.S. Bank, N.A., et al.*, 787 F. Supp. 2d 747, 752 (N.D. Ill. 2012) (citations omitted). A plaintiff may predicate an ICFA unfairness claim on violations of a statute that itself does not allow for private enforcement. *Id.*

Mr. Heffron's ICFA unfairness claim is predicated upon two bases. As discussed above, Defendant's conduct with respect to Mr. Heffron violates the FDCPA, RESPA, and HAMP. As such, Mr. Heffron has already stated an unfairness claim under ICFA. Moreover, Defendant's arguments demand that this Court ignore Defendant's primary business: mortgage servicing. By virtue of being Mr. Heffron's mortgage servicer, Green Tree chose how and where to assign any monies it received from Mr. Heffron. As noted above, Mr. Heffron's payment histories reveal that Green Tree regularly applied monies it received form Mr. Heffron to allegedly past due escrow amounts instead of to principal and interest, as Mr. Heffron desired and communicated to Defendant Mr. Heffron was completely at Green Tree's mercy. Mr. Heffron has pled a violation of ICFA for unfair business practices.

        iii.      *Mr. Heffron has properly alleged damages for the purposes of ICFA*

Courts have affirmed damages for aggravation and inconvenience where ICFA plaintiffs have also suffered actual damages. *Roche v. Fireside Chrysler-Plymouth, Mazda, Inc.*, 600 NE 2d 1218, 1228 (Ill. App. Ct. 1986). Mr. Heffron has alleged economic damages. Am. Compl. at ¶ 104. Most salient of these is that the deceptive mortgage modification recapitalized outstanding amounts—amounts Mr. Heffron had been consistently disputing—as principal due on the mortgage. Those amounts further encumbered his property. Moreover, Mr. Heffron's damages are substantial. Am. Compl. at ¶¶ 1-2, 104-5. Not only did he suffer significant emotional and physical damages, he has alleged economic damages in the form of tens of thousands of dollars in medical bills stemming

from a suicide attempt that is directly attributable to Green Tree's unfair and deceptive practices. Mr. Heffron has properly alleged damages for the purposes of his ICFA claim.

### C. Plaintiff States a Claim for Relief for Negligent Infliction of Emotional Distress

The question of whether Green Tree owed Mr. Heffron a duty is not as clear cut as Defendant suggests. "It is possible that the particular circumstances surrounding a relationship will make it a fiduciary relationship, even if the general class of debtor-creditor relationships is not." *Pommier v. Peoples Bank Marycrest*, 967 F. 2d 1115, 1119 (7th Cir. 1992) (citing Illinois law). "The essence of a fiduciary relationship is that one party is dominated by the other." *Id.* "The dominant party must accept the responsibility, accept the trust of the other party before a court can find a fiduciary relationship." *Id.* Factors like kinship, age disparity, health, mental condition, education, business experience, and the extent of reliance are relevant to a court's consideration of whether a duty exists. *Id.* The cases cited by Defendant are distinguishable on their facts from Mr. Heffron's because they address whether a lender owe borrowers duties in making or supervising the distribution of loan funds.

It has already been established that Defendant is not a lender or creditor to Mr. Heffron, it is Mr. Heffron's mortgage servicer and a debt collector. As Mr. Heffron's mortgage servicer, Green Tree exercises profound power over him. This position of power or authority over a plaintiff is a critical consideration in claims for infliction of emotional distress. *See, e.g., McGrath v. Fahey*, 533 NE 2d 806, 126 Ill.2d 78, 87 (Ill. 1988). Green Tree controlled how payments were applied to Mr. Heffron's account; determined how many times it would call him and how frequently; and decided how, if at all, to adjust the frequency and intensity of its collection efforts against him in light of his disputes, etc. Illinois courts are sensitive to this disparity in power. *See Milton v. Illinois Bell Tel. Co.*, 101 Ill. App.3d 75, 79, 427 N.E.2d 829 (Ill App. Ct. 1981) ("As Dean Prosser pointed out, 'The extreme and outrageous nature of the conduct may arise not so much from what is done as from

13

abuse by the defendant of some relation or position which gives him actual or apparent power to damage the plaintiff's interests. The result is something very like extortion.'").

In light of the above, Mr. Heffron has stated a claim for negligent infliction of emotional distress.

### D. Plaintiff States a Claim for Relief for Invasion of Privacy

Illinois courts have long recognized a right of privacy. *Leopold v. Levin*, 45 Ill.2d 434, 440, 259 N.E.2d 250 (Ill. 1970). Of the four ways to state a cause of action for invasion of privacy in Illinois, a plaintiff may allege intrusion upon the seclusion. *Roehrborn v. Lambert*, 277 Ill.App.3d 181, 660 N.E.2d 180 (Ill. App. Ct. 1995). In its discussion of the tort of intrusion upon seclusion, the Illinois Supreme Court noted the following examples "as forming the basis for the tort of intrusion into the seclusion of another . . . : invading someone's home; an illegal search of someone's shopping bag in a store; eavesdropping by wiretapping; peering into the windows of a private home; *and persistent and unwanted telephone calls.*" *Lovgren v. Citizens First National Bank of Princeton, et al.*, 126 Ill.2d 411, 417, 534 N.E.2d 987 (Ill. 1989) (citing W. Prosser & W. Keeton, Torts § 117, at 854-55 (5th ed. 1984)) (emphasis added). Courts have held that repeated and continuous calls in an attempt to collect a debt give rise to a claim for intrusion upon seclusion. *Fausto v. Credigy Servs. Corp.*, 598 F. Supp. 2d 1049, 1056 (N.D. Cal. 2009); *Joseph v. J. J. Mac Intyre*, 328 F. Supp. 2d, 1158, 1169 (N.D. Cal. 2002); *Inzerillo v. Green Tree Servicing LLC*, 2014 U.S. Dist. LEXIS 47022, 11, 2014 WL 1347175 (N.D. Cal. Apr. 3, 2014), *Panahiasal v. Gurney*, 2007 U.S. Dist. LEXIS 17269 (N.D. Cal. March 8, 2007). Simply put, the FDCPA preserves the "right to be let alone", famously classified by United States Supreme Court Justice Louis Brandeis as "the most comprehensive of rights and the right most valued by civilized men" *Olmstead v United States*, 277 US 438, 478, (1928) (Brandeis, J., dissenting), and has noted that "[p]reserving the sanctity of the home, the one retreat to which men and women

14

can repair to escape from the tribulations of their daily pursuits, is surely an important value." *Carey v. Brown*, 447 U.S. 455, 471 (1980).

The matters intruded upon by Defendant were not matters of public record, but rather were known only to Mr. Heffron and Green Tree. Moreover, Mr. Heffron's right to be left alone was certainly violated by Green Tree's numerous harassing telephone calls, up to 10 each day. Mr. Heffron has stated a claim for invasion of privacy.

**IV.     Conclusion**

For all of the above reasons, Defendant's Motion to Dismiss the Amended Complaint should be denied. To the extent this Court disagrees, Mr. Heffron requests leave to amend his complaint to address any deficiencies. *See* Fed. R. Civ. P. 15(a) (leave to file an amended complaint "shall be freely given."); *Johnson v. Cypress Hill*, 641 F.3d 867, 871-72 (7th Cir. 2011) (permitting party to amend its complaint in the absence of a clear and compelling reason).

DATED: June 4, 2015                                        Respectfully submitted,

                                                           By: /s/ Jordan M. Sartell
                                                           One of Plaintiff's Attorneys

                                                           Roger Zamparo, Jr. (ARDC #3123737)
                                                           Jordan M. Sartell (ARDC #6310097)
                                                           ZAMPARO LAW GROUP, P.C.
                                                           1600 Golf Road, Suite 1200
                                                           Rolling Meadows, IL 60008-4229
                                                           (224) 875-3202 (t)
                                                           (312) 276-4950 (f)
                                                           roger@zamparolaw.com
                                                           jordan@zamparolaw.com

**CERTIFICATE OF SERVICE**

      Jordan M. Sartell, an attorney, certifies that on June 4, 2015, he electronically filed the foregoing Plaintiff's Response in Opposition to Defendant's Motion to Dismiss with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

| | |
|---|---|
| Anna-Katrina S. Christakis (ARDC #6242675) | _/s/ Jordan M. Sartell_ |
| Candice R. Voticky (ARDC #6315007) | One of Plaintiffs' Attorneys |
| Pilgrim Christakis LLP | |
| 321 North Clark Street, 26th Floor | |
| Chicago, Illinois 60654 | |
| Ph. (312) 939-0953 | |
| Fax (312) 939-0983 | |