# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THOMAS E. HEFFRON, | ) |
| Plaintiff, | ) Case No. 15-cv-0996 |
| v. | ) Judge Sharon Johnson Coleman |
| GREEN TREE SERVICING, LLC, A Delaware Limited Liability Company, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Thomas E. Heffron ("Heffron") filed an amended complaint against Defendant Green Tree Servicing LLC ("Green Tree") asserting claims under the Fair Debt Collection Practices Act ("FDCPA") and the Illinois Consumer Fraud and Unfair Business Practices Act ("ICFA"), as well as negligent infliction of emotional distress and invasion of privacy under Illinois law. Green Tree moved to dismiss all counts for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth herein, Green Tree's motion to dismiss [14] is granted in part and denied in part.

**Background**

The following facts are taken from the Amended Complaint and its attachments and are accepted as true for the purposes of ruling on the instant motion. On May 8, 2007, Heffron granted GMAC Mortgage Corporation ("GMAC Mortgage") a first and second mortgage on his house to secure a line of credit. (Dkt. 13 ¶ 13). In October 2011, Heffron's debts, including the two mortgages, were discharged in a bankruptcy proceeding. (*Id.* at ¶ 15). GMAC Mortgage subsequently initiated proceedings to foreclose on its lien against the property. (*Id.* at ¶ 16).

Heffron, with the assistance of counsel, negotiated a modification of the terms of the first mortgage (the "GMAC Modification") providing, in pertinent part, that Heffron would "make

1

monthly principal and interest payments of $484.47," but noting that this amount "d[id] not include any required escrow payments for items such as hazard insurance or property taxes; if such escrow payments are required the monthly payments will be higher and may change as the amounts required for escrow items change." (*Id.* at ¶¶ 17–19). The cover letter that accompanied the GMAC Modification also explained the breakdown of Heffron's first modified payment, showing that he would pay $484.47 in principal and interest, and no escrow, for a total payment of $484.47. (*Id.* at ¶ 20). After Heffron made his first payment in that amount, GMAC dismissed the foreclosure suit against him. (*Id.* at ¶ 23). Heffron continued to make monthly payments of $484.47 each month. (*Id.* at ¶ 26).

Heffron subsequently defaulted on his mortgage by failing to timely make his November 2012, December 2012, and January 2013 payments. (*Id.* at ¶ 28; dkt. 13-3). On February 1, 2013, GMAC transferred its rights to service Heffron's mortgage to Green Tree. (Dkt. 13 at ¶ 30). Due to an error as to Heffron's mailing address, Heffron did not learn that Green Tree was his loan servicer until April 2013, and did not receive any written correspondence or statements from Green Tree until July 2013. (*Id.* at ¶¶ 31–36, 47).

According to Heffron, from April 2013 onwards Green Tree began calling him continuously, throughout the week and up to ten times a day, to demand payment of amounts (seemingly including escrow payments) in excess of the $484.47 that Heffron had previously been paying every month. (*Id.* at ¶¶ 37, 38). On some occasions Green Tree representatives would call him on the telephone and hang up without leaving a message. (*Id.* at ¶ 41).

In response to these calls, Heffron contacted Green Tree by letter to assert his understanding that under the GMAC modification he was personally responsible for his homeowner's insurance premiums and real estate taxes and to request the reversal of the assessed escrow charges. (*Id.* ¶ 49). On August 19, 2013, Green Tree sent Heffron a letter purportedly

denying his request to cancel his escrow amount. (*Id.* ¶ 50). A subsequent letter of August 26, 2013 stated that Green Tree was not collecting any funds to pay taxes and insurance, and that Heffron's monthly payment was $484.47. (*Id.* ¶ 51). Despite this letter, Green Tree's representatives continued to contact Heffron by phone to demand payments in excess of $484.47. (*Id.* ¶ 52).

On June 13, 2013, Green Tree sent Heffron notice of the trial period plan for a loan modification. (*Id.* ¶ 62). Heffron did not comply with the terms of the trial period plan, but Green Tree nonetheless sent him a Loan Modification agreement in October 2013 (the "Green Tree Modification)", with a monthly payment of $485.02, that Heffron accepted and executed. (*Id.* ¶¶ 65, 67). Following that modification, Green Tree's representatives continued to assert over the phone that Heffron owed more than his monthly payment, now 485.02, each month. (*Id.* ¶ 74).

On March 26, 2014, Green Tree sent Heffron notice of a loan modification trial period plan and a letter stating that Green Tree was required to set aside a portion of the monthly payment as escrow for taxes, insurance premiums, and other required fees. (*Id.* ¶ 76). The March 26, 2014 correspondence conflicted with Heffron's belief that Green Tree's representatives had already been seeking to collect escrow amounts in addition to his monthly payments. (*Id.* ¶ 77). A subsequent letter represented that escrow was required by the "Loan Modification Agreement through HAMP," although Heffron never received a loan modification through the Home Affordable Modification Program (HAMP) and was not eligible for HAMP (*Id.* ¶¶ 78, 79). After the above events, Heffron brought this action against Green Tree.

**Legal Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the allegations. The allegations must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and must contain sufficient factual material to raise a plausible right to relief. *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n.14, 127 S.Ct. 1955, 1973, 167 L.Ed.2d 929 (2007). Although Rule 8 does not require a plaintiff to plead particularized facts, the complaint must allege factual "allegations that raise a right to relief above the speculative level." *Arnett v. Webster*, 658 F.3d 742, 751–52 (7th Cir. 2011). Put differently, Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), *see also* Fed. R. Civ. P. 8(a). When ruling on a motion to dismiss, the court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 830 (7th Cir. 2012).

**Discussion**

*Heffron's FDCPA Claims*

In response to Heffron's FDCPA claims, Green Tree asserts that (1) it is not a "debt collector" as that term is defined in the FDCPA; (2) Heffron's claims are untimely under the FDCPA; and (3) Heffron has failed to adequately state a claim under sections 1692d, 1692e, or 1692f of the FDCPA. This Court addresses each argument in turn.

The FDCPA protects against abusive, deceptive, and unfair debt collection practices by debt collectors. 15 U.S.C. § 1692 *et seq*. Under that statute, a debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principle purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due and asserting to be owed or due another." 15 U.S.C. § 1692a(6). The definition of debt collector, however, specifically excludes "any person collecting or attempting to collect any debt owed or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692(a)(6)(F).

4

Green Tree contends that it is not a "debt collector" under the FDCPA because Heffron does not allege that his debt was in default when it was transferred to Green Tree. Although Heffron alleged that "GMAC told Mr. Heffron that his mortgage account was in default before it transferred the servicing of Mr. Heffron's mortgage to Green Tree," Green Tree argues that this is insufficient because it only alleges what GMAC said, not the actual truth of the matter.[1] This Court need not address that contention, however, because Green Tree does not challenge the validity of the letters from GMAC to Heffron, attached to the pleadings, which demonstrate, in light of Heffron's allegation that he only paid $484.47 a month during that period, that Heffron was in default when Green Tree obtained his debt. (Dkt. 13-3) Accordingly, this Court concludes the Heffron has adequately alleged that his debt was in default when it was transferred to Green Tree, and that Green Tree is therefore a debt collector under the FDCPA's definition.

Green Tree also contends that Heffron's FDCPA claims are time-barred. The FDCPA requires that claims under the statute be brought within one year from the date on which the violation occurs. 15 U.S.C. § 1692k(d). Because the limitations period does not begin to run until injury, this Court must look to the "specific violations alleged" to determine the date upon which the violation occurred. *Lockhart v. HSBC Finance Corp.*, No. 13 C 9323, 2014 WL 3811002, at *9 (N.D. Ill. Aug. 1, 2014) (Durkin, J.). Green Tree argues that, because Heffron filed this action on January 30, 2015, the statute of limitations bars all claims arising prior to January 30, 2014. In response, Heffron argues that all of the incidents underlying his section 1692d claims based on telephone harassment are timely pursuant to the continuing violation doctrine.

It is well established that statutes of limitations begins to run upon injury and are not tolled by subsequent injuries. *Limestone Dev. Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 801 (7th Cir. 2008). The continuing violation doctrine, however, allows suit to be delayed until a series of wrongful acts,

---

[1] Green Tree offers, and this Court is aware of, no authority holding that a loan servicer's representations to a debtor that a loan is in default are an inadequate basis from which to conclude that the loan is actually in default.

none of which are injuries in themselves, blossom into an injury on which suit can be brought. *Id.* "It is thus a doctrine not about a continuing, but about a cumulative, violation." *Id.* Consequently, the continuing violation doctrine does not apply to a series of independently actionable and discrete acts, even if those acts form an overall pattern of wrongdoing. *Kovacs v. United States*, 614 F.3d 666, 676 (7th Cir. 2010).

As is pertinent here, section 1692d forbids "causing a telephone to ring or engaging any person in telephone conversation *repeatedly or continuously* with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d (emphasis added). Repeatedly or continuously calling somebody is inherently a cumulative violation, because no individual phone call would constitute an injury under the statute. Here, Heffron alleges that Green Tree began calling him repeatedly and continuously in April 2013, and that that conduct continued throughout 2014. Accordingly, this Court holds that the continuing violation doctrine applies to Heffron's section 1692d claim and that the incidents underlying Heffron's claim which occurred prior to January 30, 2014 are not time barred.[2] *See Joseph v. J.J. Mac Intyre Cos., L.L.C.*, 281 F. Supp. 2d 1156, 1161 (N.D. Cal. 2003) (recognizing that the continuing violation doctrine can apply to claims of telephone harassment under the FDCPA).

Green Tree further contends that Heffron has not adequately alleged violations of sections 1692d, 1692e, or 1692f of the FDCPA. This Court will consider each section of the statute in turn.

*Section 1692d*

Green Tree asserts that Heffron has not stated a claim under section 1692d because he does not allege that Green Tree threatened violence, used obscene or profane language, or engaged in any conduct rising to the level of a 1692d violation. In so arguing, Green Tree deliberately ignores subsections five and six of the statute, which Green Tree acknowledges identify "causing a

---

[2] Because Heffron does not similarly argue that his claims under sections 1692e and 1692f are governed by the continuing violation doctrine, those claims are untimely to the extent that they arose prior to January 30, 2014.

telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass" and "the placement of telephone calls without meaningful disclosure of the caller's identity" as violations of the statute. 15 U.S.C. § 1692d(5), (6). Because Heffron alleges that Green Tree engaged in both forms of conduct, Heffron has adequately stated a claim pursuant to section 1692d.

*Section 1692e*

Green Tree also asserts that Heffron has not stated a claim under section 1692e because Green Tree did not misrepresent Heffron's escrow obligations. Section 1692e provides, in pertinent part, that a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Heffron alleges that Green Tree violated this provision by falsely representing that (1) Heffron was late in paying his homeowners' insurance premiums; (2) that Heffron missed his monthly payments; (3) that Heffron was participating in a HAMP Trial Period Plan; and (4) that Heffron had received a HAMP mortgage modification. Green Tree, in response, argues that its representations concerning late or missed payments were not false, because under the loan documents Heffron was obligated to pay escrow items. The loan documents attached to the pleadings, however, are not adequate to undermine Heffron's allegations that Green Tree's representatives verbally contradicted Green Tree's mailings regarding the status of his debt and his payment obligations, that Green Tree misrepresented that he had made late insurance payments, and that Green Tree incorrectly indicated his participation in HAMP trial period plans and loan modifications. Accordingly, Heffron's section 1692e allegations are not ripe for dismissal at this stage in the proceedings.

*Section 1692f*

Green Tree further asserts that Heffron has not stated a claim under section 1692f. Section 1692f provides, in pertinent part, that a debt collector may not use unfair or unconscionable means

to collect or attempt to collect any debt, including "the collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f. Here, Green Tree was expressly authorized, pursuant to the terms of both the GMAC Loan Modification and the Green Tree Loan Modification, to collect escrow amounts. Green Tree's attempts to collect escrow payments therefore are expressly authorized by the agreement creating the debt and do not violate section 1692f.

This Court is not persuaded otherwise by Heffron's assertion that Green Tree violated section 1692f through its alleged violations of Real Estate Settlement Procedures Act (RESPA) sections 12 U.S.C. § 2609(c)(1)(A) and (c)(2)(A), which concern lenders' obligation to provide debtors with initial and annual escrow statements. RESPA section 2609, however, does not provide for a private cause of action, and this Court declines to use the FDCPA as a medium to create one. *Cf. Kevelighan v. Trott & Trott, P.C.*, 771 F. Supp. 2d 763, 774 (E.D. Mich. 2010) ("Plaintiffs cannot avoid [the fact that section 2609 provides no private right of action] by merely alleging RESPA violations as FDCPA violations.").

Nor is this Court persuaded by Heffron's assertion that Green Tree acted in an unconscionable manner by providing Heffron with conflicting information about whether he owed escrow payments and how much was owed. Because this assertion is predicated on the same factual allegations as Heffron's section 1692e claim, it fails to state an independent basis on which relief can be granted. *See Stewart v. Bierman*, 859 F. Supp. 2d 754, 765 (D. Md. 2012) (dismissing a section 1692f claim where it failed to allege any conduct separate and distinct from the alleged 1692e violations); *Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 667 (S.D.N.Y. 2006) (finding that a complaint failed to state a cause of action under section 1692f where all the allegations in the complaint supported claims asserted under either sections1692g or 1692e."). Accordingly, Green Tree's section 1692f claims must be dismissed.

*The Illinois Consumer Fraud and Deceptive Business Practices Act*

Green Tree also contends that Heffron has failed to state a claim for relief alleging deceptive practices or unfair practices under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). The elements of a claim under ICFA are: (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010).

Conduct is unfair for the purposes of the ICFA if it violates public policy, oppresses the consumer so that there is little choice but to submit, or causes consumers substantial injury. A practice can offend public policy, in pertinent part, if it violates a standard of conduct contained in an existing statute or common law doctrine that typically applies to such a situation. *Boyd v. U.S. Bank, N.A.,* ex rel. *Sasco Aames Mortg. Loan Trust, Series 2003-1*, 787 F. Supp. 2d 747, 752 (N.D. Ill. 2011). Here, Heffron argues that Green Tree's alleged violation of FDCPA section 1692d demonstrates that it engaged in a practice of harassing debtors with repeated telephone calls that was contrary to public policy, and that his factual allegations demonstrate both the oppressive nature of the alleged conduct and the potential for substantial injury. At this early stage in the proceedings, these allegations are adequate to state a claim under the ICFA.

*Negligent Infliction of Emotional Distress*

Green Tree also contends that Heffron has failed to state a claim for negligent infliction of emotional distress because Green Tree does not owe Heffron any duty of care. To state a claim for negligent infliction of emotional distress under Illinois law, a plaintiff is required to plead that the defendant had a duty of care, that the defendant breached that duty, and that the breach proximately caused the plaintiff's injury. *Parks v. Kownacki*, 737 N.E.2d 287, 297, 193 Ill.2d 164, 182 (2000).

In Illinois, "[w]hether a duty of care exists is a question of law to be determined by the court." *Bajwa v. Metro. Life Ins. Co.*, 804 N.E.2d 519, 526 (Ill. 2004). The existence of a duty depends on the parties having a relationship such that the law gives the defendant an obligation of reasonable conduct for the benefit of the plaintiff. *Id.* Here, Heffron alleges that Green Tree had a duty of care to act reasonably in communicating with him about his debt and in attempting to collect money from him.

Although it is well established that mortgage servicers do not ordinarily owe borrowers a duty of care when engaged in the process of making or modifying loans, the parties offer, and this Court is aware of, no Illinois cases holding whether or not a duty of care exists with respect to a servicer's collection-related communications. Accordingly, the question of whether or not a duty of care exists in this instance is a question more properly addressed at the summary judgment stage. *Diperna v. Chi. Sch. of Prof'l Psychology*, No. 14-cv-0057, 2015 WL 361902, at *4 (N.D. Ill. Jan. 27, 2015) (Darrah, J.). For now, it is sufficient that Heffron has alleged that an independent duty of care exists, and Heffron has therefore adequately stated a claim for negligent infliction of emotional distress. *Id.*

*Invasion of Privacy*

Finally, Green Tree contends that Heffron has failed to state a claim for invasion of privacy—intrusion upon seclusion. To state a claim for intrusion upon seclusion, a plaintiff must allege that (1) the defendant committed an unauthorized intrusion or prying into the plaintiff's seclusion; (2) the intrusion would be highly offensive or objectionable to a reasonable person; (3) the matter intruded on was private; and (4) that the intrusion caused the plaintiff anguish and suffering. Here, Heffron alleges that Green Tree intruded upon a private matter "insofar as it concerned, among other things, personal financial information." Heffron, however, fails to plausibly allege how Green Tree intruded upon the privacy of his personal financial information, all of which was

seemingly already known to Green Tree through its role as Heffron's loan servicer. *Cf. Tureen v. Equifax, Inc.*, 571 F.2d 411, 416 (8th Cir. 1978) (recognizing that an insurer's internal use of client information contained in their files did not intrude on the client's privacy). Moreover, Heffron does not plausibly allege how Green Tree's intrusion upon the privacy of his personal financial information caused him anguish and suffering. Heffron has thus failed to state a claim for invasion of privacy.

**Conclusion**

For the reasons stated herein, Green Tree's motion to dismiss is granted with respect to Heffron's claims under 15 U.S.C. § 1692f and his state law claim for invasion of privacy, and denied as to all other counts.

IT IS SO ORDERED.

Date:   January 5, 2016

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge